## Kington Coal Company v. Aaron.

(Decided March 12, 1912.)

### Appeal from Hopkins Circuit Court.

1. Depositions—Interrogatories.—Where only three days' notice to take depositions is required under Section 567 of the Civil Code, the adverse party has no right to demand that they shall be taken upon interrogatories.

2. Evidence—Res Gestae.—A declaration made by an injured person at the place of the injury and within a few moments after it happened, is competent as a part of the res gestae.

3. Evidence of Conditions After Accident.—Where an employe sued for damages for injuries received, due to the fact that coal cars were sent from the mine to the tipple without a sufficient crew, it was not competent for the mine owner to show that after the accident a greater number of cars were sent in charge of the same number of hands as were on the train when the accident happened.

4.  Master and Servant—Liability for Ordinary, Neglect.—In an
    action by the servant against the master for personal injuries,
    growing out of unsafe appliances or premises, or insufficient
    assistance to perform the labor engaged in, a recovery may be
    had upon proof of ordinary neglect.

JOHNSON & JENNINGS for appellant.

MAURICE K. GORDON, GORDON & GORDON & COX, and
ROARK & FINN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Aaron, was employed as a laborer by
the appellant company at its coal mine and was painfully
and permanently injured while in the performance of his
duties. In an action to recover damages, he was awarded
$1,500.

At the time he received the injuries complained of,
Aaron was working as "second tipper" under Turley,
the head tipper or foreman; and it was the duty of these
two men, assisted by a third man called the "coupler," to
bring the mine cars loaded with coal from the mouth of
the mine on the hillside, down an incline track to the tip-
ple, where the mine cars were dumped into railroad
cars. The mouth of the mine was several hundred feet
from the tipple, and this track for a distance of some 250
feet next to the tipple was on a wooden trestle, varying
from four to thirty feet in height. There was also on
this trestle another track for the use of empty cars, but
this track was a down grade from the tipple to the mouth
of the mine, while the track on which the loaded cars run
was a down grade from the mouth of the mine to the tip-
ple, they run of their own momentum to the tipple, and
when the empty cars were started from the tipple to the
mine, they run of their own momentum to the mine—no
other power being used to move either the loaded or
empty cars.

Previous to the time of the accident it had been the
custom to attack or couple together from six to eleven
loaded cars at the mine and place them in charge of three
men, who controlled the movement of the cars by brakes;
but, on the occasion when Aaron was injured, there were
fifteen cars in the train, and only two men in charge of
it; and, Aaron's cause of action is based on the propo-
sition that the coal company negligently failed to furnish

a sufficient number of men to operate and control this train on its journey from the mine to the tipple.

There is quite a conflict in the evidence upon many points, but we think that upon the whole case there was sufficient evidence to take the case to the jury and to sustain the verdict, and that the judgment should be affirmed unless it be that there are errors of law in the record that entitle the appellant to a new trial.

The first error relied on is the admission of the depositions of Drs. Moss and Gossett, read as evidence for appellee. The objection to the reading of these depositions was based upon the ground that they should have been taken upon interrogatories, as required by a notice to take them in this manner. These depositions were taken at Franklin, Kentucky, a distance of some 122 miles from Madisonville, the place of trial, by the usual course of travel. Section 567 of the Civil Code of Practice provides in part that:

"A notice shall be deemed reasonable that allows one day for each thirty miles which the party will have to travel and one day for preparation if the distance be less than one hundred miles, and two days if it be more. If the distance exceed fifty miles and the usual mode of travel for the whole or a part of the distance be by steamboat, railroad cars or other public conveyances, the time ordinarily required by such mode of travel, with the days given for preparation, shall be deemed sufficient in the notice."

As the distance between Madisonville and Franklin was more than one hundred miles, two days were allowed for preparation, and as the journey between the two places could easily be made in less than one day, it is very plain that only three days' notice was required. The notice to take these depositions was served on January 27th, and the depositions were taken on January 31st, and so the notice was entirely sufficient. Section 571, of the Code, provides that:

"If more than three days' notice to take a deposition be required by section 567, the party to whom the notice is given may, by notice to the adverse party or his attorney, served on the day when the first notice is given, or on the following day, require the deposition to be taken upon interrogatories."

As only three days' notice to take these depositions was inquired, the appellant had no right to demand that they be taken upon interrogatories.

Complaint is also made of the action of the trial court in admitting evidence by appellee that it was not practicable to stand on the ground to perform his duties in braking the cars, and also evidence that there was no railing on the platform, and that it was dangerous to send a train of fifteen cars in one trip with only two men. It was entirely competent to admit evidence that it was not practicable for appellee to stand on the ground as one of the contentions of appellant was that appellee should have been on the ground in place of riding on the cars at the time he was injured; and the evidence that it was not practicable to perform his duties standing on the ground was admissible to show the reason why he remained on the car. No recovery was sought on the ground that the platform was defective, or because of the failure to have railings around it, and the evidence of the condition of the platform in this respect was only introduced for the purpose of showing that the plaintiff could not by the exercise of care have escaped injury. When the evidence as to the condition of the platform was offered and objected to, the trial judge admonished the jury that they should not consider it in determining the liability of the defendant, but merely upon the question as to whether the plaintiff could have gotten off the car by the exercise of ordinary care. With this admonition, the evidence was proper.

The objection to evidence that it was dangerous to send a train of 15 cars on one trip is based upon the proposition that the only way in which proof of this dangerous condition could have been made was by the introduction of expert witnesses. This was a matter upon which the jury were entitled to have the opinion of some person familiar with the conditions and the appellee qualified himself to speak upon this point.

Another objection is raised with reference to a declaration made by appellee. It appears from the record that it was customary to send three men out with a train of cars, and that appellee did not know that there was only two men on this train, including himself, until after the accident happened. In the course of his examination appellee was asked this question:

"Q. Do you know whether the train that ran off with you had the brakes laid down on it or not, so as to check the speed?

"A. I didn't know it until after they were carrying

me down, and passed by it, and I says 'they never even threw a brake;' I says 'where in. the hell is that other fellow; if he had been here he would have held that car; and Wilson, the bank boss, he says, I sent him in the mines to make a shift.' ' '

This statement of appellee was made at the place of the accident, and within a few moments after it happened, and was competent as a part of the res gestae.

It is also insisted that the court erred in excluding testimony that subsequent to the accident to appellee as many as 22 loaded cars had been taken out in one train. Appellant was permitted to prove that two men were sufficient to handle 15 loaded cars, and it was not error to exclude from the jury offered evidence that more than this number was occasionally carried out by two men. Upon this point, the only issue was, whether or not two men were sufficient to safely bring out the number of cars in the train at the time appellee was injured. His testimony was to the effect that two men were not sufficient. On the other hand, the evidence for appellant was that two men were sufficient. There was no reason why there should have been evidence as to larger numbers being carried out by two men. The company might have sent out trains of 25 cars, with only two men, but this would not conduce to show that two men were sufficient for this number of cars.

It is further said that appellee was aware of the fact that only two men were on this train, and that he assumed whatever risk attended the failure to have the train equipped with a crew of three men; but, appellee testifies positively that he did not know that there were 15 cars in the train and did not know that the third man was not on it, as it had been customary to send out from 6 to 11 cars in charge of three men, and he supposed the trip on which he got hurt had the same number of cars usually carried and was equipped with the same number of hands, and that he would not have gotten on the train if he had known there were 15 cars in the train and only two men.

The instructions are criticised because they allow a recovery for the ordinary neglect of the appellant. It is said by counsel that in actions by the servant against the master to recover damages for personal injuries, gross negligence must be shown except where the master fails to furnish a safe place to work. But this point was expressly decided adversely to the contention of appel-

lant in Illinois Central Railroad Company v. Langan, 116 Ky., 318.

We find no error in the record that would justify us in remanding the case for a new trial, and the judgment is affirmed.